UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NANCY LYNN MILLER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

C15-5068 TSZ

ORDER

THIS MATTER comes before the Court on appeal from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying plaintiff Nancy Lynn Miller's application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Having reviewed all papers filed in support of and in opposition to the appeal, the Court AFFIRMS the Commissioner's decision denying DIB benefits to plaintiff and DIRECTS the Clerk to send a copy of this Order to all counsel of record.

**Background**

Plaintiff was born on January 10, 1959, and is currently 56 years old.  AR 19.  She completed some high school but left when she married.  AR 43.  After leaving school,

ORDER - 1

plaintiff worked as a dishwasher and cook at various points.  AR 55-56.  She has not engaged in substantial gainful activity since August 16, 2011, the date on which she alleges onset of her disabilities.  AR 12.  The Commissioner has determined that plaintiff suffers from the following severe impairments: (1) osteoarthritis of multiple joints and (ii) major depressive disorder.  AR 12.

In December 2011, plaintiff filed applications for DIB payments.  AR 63.  In January 2014, Administrative Law Judge Robert P. Kingsley found plaintiff ineligible for DIB payments because she has the requisite functional capacity to perform work as an injection molding machine tender/offbearer and bottling machine attendant, which are jobs existing in significant numbers in the national and local economy.  AR 20.  In December 2014 the Appeals Council denied plaintiff's request for review, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner for purposes of 42 U.S.C. § 405(g).  Plaintiff timely filed the present action challenging the denial of benefits.

**Discussion**

**A.     Standard of Review**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).  Step one inquires whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b); *see also* 20 C.F.R. § 404.1572 (defining substantial gainful activity as significant physical or mental activities done or usually done for pay or profit).  If so, the claimant is not entitled

ORDER - 2

to disability benefits, and no further evaluative steps are required. Step two asks whether the claimant has a severe impairment, or a combination of impairments, that significantly limits t he claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not entitled to disability benefits, and again, additional analysis is not required. Step three involves a determination of whether any of claimant's severe impairments is equivalent to one that is listed in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant with an impairment that "meets or equals" a listed impairment for the requisite twelve-month duration is per se disabled and qualifies for benefits.

If the claimant is not per se disabled, then the question under step four is whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f) and 416.920(e) & (f). If the claimant can still perform past relevant work, then the claimant is not entitled to disability benefits and the inquiry ends there. On the other hand, if the opposite conclusion is reached, the burden shifts to the Commissioner at step five to prove that the claimant can make an adjustment to other work, taking into account the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(g) & 416.920(g). If the claimant cannot make such adjustment to other work, disability benefits may be awarded.

This Court's review of a decision reached via this five-step process is limited to assessing whether the Commissioner's denial of benefits is free of legal error and based on factual findings that are supported by substantial evidence. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); *see* 42 U.S.C. § 405(g). Substantial evidence means more than

a mere scintilla but less than a preponderance of evidence; it is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Court may not affirm simply by isolating a specific quantum of supporting evidence. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If, however, the evidence reasonably supports both affirming and reversing the denial of benefits, the Court may not substitute its judgment for that of the Commissioner. *Reddick*, 157 F.3d at 720; *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld").

B. <u>Issues on Appeal</u>

In this matter, plaintiff argues that the ALJ: (i) failed to sufficiently develop the record, (ii) miscalculated her age when assessing her residual functional capacity, (iii) ignored the opinion of her treating physician, and (iv) failed to sufficiently take into account her mental impairments when determining her residual functional capacity.

1. **Failure to Develop the Record**

Plaintiff contends that the ALJ failed to develop the record by not ordering further testing of her grip. She primarily relies on the notes of Dr. Trula Thompson, an examining doctor for the Washington State Department of Social and Health Services,

ORDER - 4

who observed that plaintiff's hands were consistent with arthritis and recommended further case development.  TR 555.  Plaintiff argues that the ALJ erred by not following this recommendation.

It is well-established that the ALJ has an obligation to develop the record when it is ambiguous or inadequate to allow proper evaluation of the evidence.  *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  Still, this obligation does not absolve a claimant from supporting his or her claim with evidence to prove disability.  *See* 20 C.F.R. § 404.1512.  Standing alone, Dr. Thompson's recommendation for further testing may have triggered the ALJ's obligation to develop the record.  However, there is additional evidence in the record upon which the ALJ relied which negated a duty to do so.  The ALJ cited Dr. Chaudry, an examining source, who observed that plaintiff "had no difficulty using her hands and she had full grip strength."  AR 16; *see also* AR 302 ("Grip strength in both hands normal, 5/5.").  Hence, the record was neither ambiguous nor inadequate to allow proper evaluation of the evidence; it simply was counter to plaintiff's position.  The mere possibility that additional testing could provide contradictory evidence is insufficient to disturb the ALJ's decision.  Accordingly, the ALJ did not err by not ordering further testing.

      2.    **Failure to Correctly Determine Age**

Next, plaintiff argues that the ALJ committed reversible error by miscalculating her age.  In his decision, the ALJ wrote that plaintiff "was born on January 10, 1959 and was 53 years old, which is defined as a younger individual age 18-49, on the date last insured.  The claimant subsequently changed age category to closely approaching

ORDER - 5

advanced age." AR 19.  Plaintiff contends the date of birth and age were correct but that the ALJ mistakenly listed her as "a younger individual age 18-49."

A mere scrivener's error is not a basis to reverse the ALJ's decision.  *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (noting that the ALJ had stated the correct dates before mistakenly listing them).  So long as the ALJ's intent is clear, any typographical error will be disregarded.  *See, e.g.*, *Douglas v. Astrue*, 2010 WL 3522298 (D.S.C. Sept. 3, 2010).  It is clear that this misstatement was a mere typographical error that had no adverse impact on plaintiff.  The ALJ correctly determined her date of birth and age in the decision.  AR 19.  In addition, he elicited the correct age at the hearing and instructed the vocational expert to use that age.  AR 35; AR 56.  Thus, the ALJ's misstatement is insufficient to reverse his decision.

### 3. Disregarding Dr. Landrum

Next, plaintiff argues that the ALJ erred by failing to address medical evidence she attributes to Dr. Landrum, whom she characterizes as a treating source.  Plaintiff claims that the opinions reached by Brian Reiton, a physician's assistant, are actually the conclusions of Dr. Landrum and that the ALJ failed by not providing "specific, legitimate reasons" supported by "substantial evidence" to reject them.  *See Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007); AR 17.  There is no evidence that Dr. Landrum ever met with plaintiff, examined her, or filled out an evaluation of her limitations.

Plaintiff relies on *Benton ex rel. Benton v. Barnhart* to argue that Dr. Landrum's oversight of Mr. Reiton transmutes the dynamic into a treating source relationship.  However, *Benton* is distinguishable from the instant case.  There, a psychiatrist had

examined the claimant "not much more than a year before his report, and was still employed" as a "treating physician" to cure her.  331 F.3d 1030, 1038-39 (9th Cir. 2003).  In addition, the same psychiatrist also oversaw a treatment team comprised of other mental health professionals.  *Id.* at 1035-36.  It was the overseeing psychiatrist who "completed the mental assessment of [plaintiff] based on his assessment of information provided by those on the treatment team with more direct patient contact." *Id.* at 1036.  This critical difference makes *Benton* inapposite.

       Critically, there is no evidence that Dr. Landrum filled out an evaluation of plaintiff's symptoms.  Instead, plaintiff cites to an evaluation performed by Mr. Reiton based on his interactions with plaintiff.  *See* AR 557.  Although Dr. Landrum may have "reviewed and approved" Mr. Reiton's evaluation, that relationship is a far cry from the situation involved in *Barnhart*.  *See Jerome v. Colvin*, 2015 WL 2450876, *4 (W.D. Wash. May 21, 2015) (rejecting argument that Dr. Landrum was treating source where she "simply signed on to the assessments made by [nurse practitioner]").  Put another way, the psychiatrist in *Barnhart* actually rendered an opinion whereas Dr. Landrum did not.  Administrative oversight of Mr. Reiton's work is too distinct from reaching an opinion based on information gathered by a treatment team to convert Dr. Landrum into a treating source.  Accordingly, Dr. Landrum did not offer an opinion that the ALJ was required to address.

       **4.    Impact of Mental Health on RFC**

       Finally, plaintiff argues that the ALJ committed reversible error by not properly weighing evidence of her depression when calculating her RFC.  The ALJ determined

ORDER - 7

that plaintiff had the ability to perform light work and perform simple routine tasks. This determination is supported by substantial evidence. The ALJ evaluated evidence of plaintiff's depression, noting that even the clinic which diagnosed her with depression also observed that treatment was effective at managing her symptoms. AR 16; AR 274 ("Client shows reduced symptoms, is stable on medication."). A functional examination by Dr. Denard, a psychologist, demonstrated that plaintiff had some mild to moderate limitations with her attention and concentration that would impact her work. *See* AR 322-25. The ALJ took account of this limitation by limiting her RFC to "simple routine tasks." AR 14. Accordingly, the ALJ's determination is supported by substantial evidence and will not be reversed.

**Conclusion:**

For the foregoing reasons, the Commissioner's denial of DIB benefits is AFFIRMED.

IT IS SO ORDERED.

Dated this 26th day of October, 2015.

Thomas S. Zilly
United States District Judge

ORDER - 8